UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

STEPHANIE PENA,

**COMPLAINT**

Plaintiff,                    Dkt. No. 23 cv 1945

-v-

THE CITY OF NEW YORK, DOC Correction Officer,
("C.O.") Martinez, C.O. Gonzalez, C.O. Anjione,
C.O. Samuel, C.O. Hanes C.O. Rodgers, Captain Hamilton,
C.O. Martin, Captain Jane Doe #1, Captain John Doe #1,
C.O. John Doe #1 C.O. John Doe #2, C.O. John Doe #3,
C.O. John Doe #4, C.O. and Jane Doe #1,

Defendants.

_____

Plaintiff Stephanie Pena through her attorneys The Aboushi Law Firm PLLC and

Rickner PLLC, as and for the complaint, do hereby state and allege:

**PRELIMINARY STATEMENT**

1.    Ms. Pena's rights were violated when officers of the New York City Department of

Correction workers ("DOC") unconstitutionally and negligently failed to protect Ms. Pena,

and used unnecessary force against her.

2.    Ms. Pena now brings suit under 42 U.S.C. § 1983 for the violations of her rights and seeks

an award of compensatory damages, punitive damages, and attorneys' fees.

**JURISDICTION AND VENUE**

3.    The Court has original subject matter jurisdiction over plaintiff's federal claims pursuant to

28 U.S.C. §§ 1331, 1343 (a)(3)-(4) and because Plaintiff's claims arise under a law of the United

States, namely 42 U.S.C. § 1983, and seek redress of the deprivation, under color of state law, of

rights guaranteed by the United States Constitution.

4.     Pursuant to New York State General Municipal Law § 50-e, plaintiff filed a timely Notice of Claim with the New York City Comptroller.

5.     Ms. Pena's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

6.     Venue is lodged in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because substantial parts of the events or omissions giving rise to the claims occurred in this district.

<u>**PARTIES**</u>

7.     Plaintiff, Ms. Pena was at all times relevant to the action, a person incarcerated at Riker's Island, Bronx New York.

8.     Defendant the City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a corrections department which acts as its agent in the area of correction enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a corrections department and the employment of corrections officers as said risks attach to the public consumers of the services provided by the New York City Department of Corrections ("DOC").

9.     New York City DOC Correction Officers ("C.O.") C.O. Martinez, C.O. Gonzalez, C.O. Anjione, C.O. Samuel, C.O. Hanes C.O. Rodgers, Captain Hamilton, C.O. Martin and Captain Jane Doe #1, Captain John Doe #1, C.O. Jane Doe #1, C.O. John Doe #1, C.O. John Doe #2, C.O. John Doe #3 and C.O. John Doe #4 (referred to collectively as the "Individual Defendants") are and were at all times relevant herein, herein correction officers at Riker's Island, employed by the City of New York. At all relevant times described herein the Individual Defendants were acting under color of New York state law and acting in the course and scope of their duties.

They are sued in their individual capacity.

10.     The true names and shield numbers of defendants Captain Jane Doe #1, Captain John Doe #1, C.O. Jane Doe #1 and C.O. John Doe #1, C.O. John Doe #2, C.O. John Doe #3, and C.O. John Doe #4 are not currently known to the plaintiff. However, they are employees or agents of DOC. Accordingly, they are entitled to representation in the action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants become known to plaintiff and (b) that the Law Department should immediately begin preparing their defense in the action.

11.     At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the DOC, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the DOC at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the DOC and incidental to the lawful pursuit of their duties as officers, employees and agents of the DOC.

12.     The acts of the Individual Defendants' hereafter were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

13.     At all relevant times, the Individual Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

14. On March 09, 2022, the individual defendants and employees of the City of New York assaulted Ms. Pena causing her physical and emotional harm and damages.

15. On March 09, 2022, Ms. Pena was detained at the Rose M. Singer Center ("RMSC") on Riker's Island Jail and was produced to Queens Criminal Court house for an appearance.

16. Upon the completion of the appearance, she was tightly handcuffed and physically carried by C.O.'s John Doe #1, Black, 6'1 and John Doe #2 Black, 5'9 and taken to the holding cells behind the courthouse.

17. Captain Jane Doe #1 petite, short- 4'11(Pena is 5'2), Black light skinned with a bob haircut, and Captain John Doe #1 Black, medium build, 5'9 escorted Ms. Pena and C.O.s John Doe #1 and #2 to her holding cell.

18. Upon arriving at the holding cell, C.O. John Doe #1 and C.O. John Doe #2 dropped Ms. Pena onto the floor, while she was handcuffed, causing her face and body to slam into the ground while Captain Jane Doe #1 and Captain John Doe #2 watched and failed to intervene.

19. Ms. Pena was in excruciating pain and requested medical attention to which Captain Jane Doe #1 denied her.

20. Ms. Pena was then transported back to RMSC where she had been in protective custody for several days because of threats of violence made against her by other detainees and because her safety and health were at risk from the threats.

21. At approximately 1pm on the same day, Ms. Pena informed a female C.O. that she needed medical attention because of the use of force against her after her court appearance and advised her that she was in severe pain. Said female C.O. told Ms. Pena to wait. At approximately 4:30pm, Ms. Pena again asked the C.O. when she would be able to get medical attention and she was told again to just wait. At this time, Ms. Pena saw two other detainees from her housing unit return from the medical

clinic. This meant that the C.O. in charge of the housing unit was letting other detainees go in groups to the medical clinic but had deliberately refused to permit Ms. Pena to seek medical attention.

22.    Ms. Pena then approached C.O. Gonzalez and asked him if she could go to the medical clinic, that it was urgent and that she was in severe pain. C.O. Gonzalez refused to acknowledge Ms. Pena's request and became irate.

23.    C.O. Gonzales, with one hand, grabbed Ms. Pena by her pony tail, and with the other hand, choked her and lifted her up against a cement wall. C.O. Gonzalez was choking Ms. Pena while pressing her face into the cement wall.

24.    Ms. Pena tried to scream for help but C.O. Gonzalez' grip was too tight and she could not breathe. C.O. Gonzalez then released Ms. Pena's hair and grabbed her left arm and pushed it behind her back and up towards her shoulder. C.O. Gonzalez then released his chokehold, grabbed Ms. Pena's right arm and also pulled it behind her back and up towards her shoulder and neck. Ms. Pena pleaded with C.O. Gonzalez to stop pulling her arms so high because she was in excruciating pain and felt her arms would pop out of her shoulders.

25.    C.O. Gonzalez ignored her and kept her in this compromising position for at least ten minutes and causing severe pain to her arms, shoulders and back. While C.O. Gonzalez was assaulting Ms. Pena, C.O. Anjione watched and failed to intervene.

26.    Thereafter, a C.O. nicknamed "MOB", removed Ms. Pena from protective custody and placed her in intake. Ms. Pena complained that her arms were hurting her, she was in excruciating pain and that she needed medical attention. Her pleas were ignored and she was kept in intake until 6pm the following day, March 10, 2022.

27.    C.O.  Martinez forced Ms. Pena to go to housing unit 2 East B and Ms. Pena repeatedly told CO Martinez as well as C.O.s Samuel, Hanes, Rodgers and Captain Hamilton, and several others, that she could not be placed in general population because of threats made to her life and fear of violence

that threatened her safety.

28.     Ms. Pena demanded she remain in protective custody. C.O. Martinez refused and forced Ms. Pena

to go to 2 East B. As soon as she got there, at least 30-35 female detainees began yelling and

screaming that they did not want Ms. Pena in their housing unit and that they would "jump" her"

meaning that they would physically assault her.

29.     Ms. Pena told the C.O.s Samuel, Hanes, Rodgers and Captain Hamilton, that she could not stay

there and was in fear for her safety and wellbeing. C.O.'s Samuel, Hanes, Rodgers and Captain

Hamilton continued to push Ms. Pena through the doors of the housing unit as the screams and

threats from the female detainees continued.

30.     Ms. Pena asked for an inmate statement form so she can document her fears and make a complaint

about being forced into a dangerous circumstance. Captain Hamilton rejected her request and

directed all captains and C.O.'s to turn off their body cameras and exit through the bathroom where

there were no cameras present.

31.     Ms. Pena approached C.O. Martinez, who is about 6'2ft and 250-300lbs, and told him she was

scared she was going to get beaten up and to please not leave her in the housing unit. C.O. Martinez

told her that she had to deal with it.

32.     Ms. Pena pleaded with him and two other C.O.'s, John Doe #3 and John Doe #4 to not leave her

there and C.O. Martinez picked Ms. Pena up and slammed her into the floor causing her face to hit

the floor, her skin to split open and blood to gush everywhere.

33.     At this point, the other female detainees rushed to see what the loud crashing noise was and found

Ms. Pena gushing blood on the floor. C.O. Martinez then put Ms. Pena on her stomach and put his

knee on the base of her neck. C.O. Martinez then took Ms. Pena's arms and twisted them behind

her and up to her neck. Ms. Pena was screaming in excruciating pain and told him to stop.

34.     C.O.s John Doe #3, #4 and C.O. Jane Doe #1 watched this assault happened and failed to intervene.

Approximately 7 minutes later, another C.O. came in with a gurney, shackled Ms. Pena extremely

tight then lifted her by the shackles and placed Ms. Pena stomach down on the gurney. Ms. Pena begged to be taken to the medical clinic.

35.   At the medical clinic, her shirt was cut off from how much her left shoulder swelled and because she could not move her arms or shoulder due to the pain and immobility and the C.O.s were immediately directed to take her to the Riker's Medical Facility for her injuries. Ms. Pena suffered a dislocated shoulder, torn rotator cuff and other injuries.

36.   Upon returning from the emergency room, Ms. Pena requested a grievance form from her housing officer to document the use of force against her that occurred on March 09 and March 10.

37.   Ms. Pena was not permitted to leave her cell and was not permitted to deliver her grievance form herself.

38.   She received a form, filled it out and returned it to a captain who acknowledged it was a grievance form and the captain said she would submit it in the grievance office.

39.   A few days later, Ms. Pena called 611 to report her injuries and requested a follow up to her grievance report. Ms. Pena was told she would be put on a list to see a doctor but that never happened. Ms. Pena called 611 2-3 more times to follow up and was continuously told she would be put on a list.

40.   Ms. Pena followed up several times about her grievance and received no updated from either the captain who accepted the form or the grievance officer.

41.   Ms. Pena was then transferred from RMSC to Bedford Correctional Facility in August of 2022 and then Albion Correctional Facility in September of 2022 with no way to follow up on her grievance.

42.   The individual defendants used excessive force on Ms. Pena.

43.   The Individual Defendants' actions were unlawful and violated plaintiff's constitutional rights and common law rights.

44.   As a result of the use of force against Ms. Pena, plaintiff experienced pain, suffering, and extreme mental anguish.

7

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(*Against the Individual Defendants*)

45.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

46.    The Defendants, planned, encouraged, and/or participated in the unprovoked physical attack on Ms. Pena.

47.    The use of force against Ms. Pena was done maliciously and sadistically, and constituted cruel and unusual punishment.

48.    In committing the acts and omissions complained of herein, the Individual Defendants acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth, and Fourteenth Amendments to the United States Constitution, including, but not limited to the right to be free from unreasonable search and seizure, including the use of excessive force and the right to be free from the deliberate indifference to Ms. Pena's serious medical needs.

49.    In committing the acts and omissions complained of herein, the Individual Defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

50.    As a direct and proximate result of the Individual Defendants' deprivation of Ms. Pena's constitutional rights, Ms. Pena suffered the injuries and damages set forth above.

51.    The unlawful conduct of the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CLAIM**
**LIABILITY OF THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS –**
**42 U.S.C. § 1983**
(*Against defendant the City of New York*)

52.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

53.     At all times material to the complaint, defendant City had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

54.     At all times material to the complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the Individual Defendants and failed to inform the Individual Defendant's supervisors of their need to train, screen, supervise or discipline the Individual Defendants.

55.     The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause Ms. Pena's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth, and Fourteenth Amendments.

56.     As a result of the foregoing, Ms. Pena was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured.

**THIRD CLAIM**
**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS**

57.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58.     The conduct of defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant The City of New York, clothed with and/or invoking state power and/or authority, and, as a result, defendant The City of New York is liable to Plaintiff pursuant

to the state common law doctrine of respondeat superior.

59.    As a result of the foregoing, Ms. Pena suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM
## ASSAULT AND BATTERY

60.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61.    By the actions described above, defendants did inflict assault and battery upon Plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to Ms. Pena and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

62.    As a result of the foregoing, Ms. Pena was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM
## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Ms. Pena.

65.    The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Ms. Pena and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

66.    As a result of the foregoing, Ms. Pena suffered specific and serious bodily injury, pain

and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### SIXTH CLAIM
### NEGLIGENCE

67.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

68.     The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to Ms. Pena. The defendants owed a duty of care to Ms. Pena, in that they failed to supervise the jail and to protect Ms. Pena in a manner which would reasonably provide for the safely of the inmates. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Ms. Pena's and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York, including their failure to supervise the inmates in their charge.

69.     As a result of the foregoing, Ms. Pena was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### SEVENTH CLAIM
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

70.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71.     Defendant the City of New York negligently hired, screened, retained, supervised, and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Ms. Pena and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72.     As a result of the foregoing, Ms. Pena was deprived of their liberty, suffered specific

and serious bodily injury, pain and suffering, psychological and emotional injury, costs

and expenses, and was otherwise damaged and injured.

**THIRD CAUSE OF ACTION**
**<u>FAILURE TO INTERVENE AGAINST ALL DEFENDANTS</u>**

73.  Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

74.  Defendants failed to intervene to prevent, end or report the unlawful and

unconstitutional conduct to which Ms. Pena was subjected despite the fact that they had

opportunities to do so.

75.  Defendants thereby displayed deliberate indifference to Ms. Pena's rights, including but

not limited to her rights to be free from excessive force and retaliation.

76.  Defendants thus violated Mr. Pena's rights under the United States Constitution, which

is actionable under 42 U.S.C. § 1983.

77.  As a direct and proximate result of the deprivation of her constitutional rights, Ms. Pena

suffered the injuries and damages set forth above.

78.  Defendants are therefore liable for Ms. Pena's injuries.

79.  Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of

such a nature that punitive damages should be imposed.

**<u>JURY DEMAND</u>**

80.  Plaintiff demands a trial by jury in their action on each and every one of their damage

claims.

WHEREFORE, Ms. Pena demands judgment against the defendants individually and

jointly and prays for relief as follows:

a.  That she be compensated for violation of her constitutional rights and common

12

law torts, pain, suffering, mental anguish and humiliation; and

b.      That she be awarded punitive damages against the Individual Defendants; and

c.      That she be compensated for attorneys' fees and the costs and disbursements of

their action; and

d.      For such other further and different relief as to the Court may seem just and

proper.

Dated:      March 07, 2023
New York, New York

> Respectfully Submitted,
> THE ABOUSHI LAW FIRM PLLC
>
> _____/s/_____
> BY: Tahanie A. Aboushi, Esq.
> 1441 Broadway, Fifth Floor
> New York, New York 10018
> Telephone: (212) 391-8500
>
> and
>
> RICKNER PLLC
>
> _____/s/_____
> BY: Rob Rickner, Esq.
> The Woolworth Building
> 233 Broadway Suite 2220
> New York, New York 10279
> Telephone: (212) 300-6506
> *Attorneys for Plaintiff*